907 So.2d 723 (2005)
Lea Sinclair FILSON and Ron Filson
v.
WINDSOR COURT HOTEL, et al.
No. 2004-CC-2893.
Supreme Court of Louisiana.
June 29, 2005.
*725 Laurie A. White & Associates, LLC, Laurie A. White, Autumn A. Town, New Orleans, Counsel for Applicant.
Connick & Connick, LLC, William P. Connick, Michael S. Futrell, Metairie, Counsel for Respondent.
VICTORY, J.
We granted this writ application to determine whether the filing of an answer and discovery requests by a defendant upon whom service was not requested within 90 days of the commencement of the action as required by La. C.C.P. art. 1201(C) constitutes a waiver of that requirement. After reviewing the record and the applicable law, we affirm the judgment of the court of appeal and hold that the mere filing of an answer and discovery requests by the defendant does not waive his right to file a motion for involuntary dismissal under La. C.C.P. art. 1672(C).

FACTS AND PROCEDURAL HISTORY
Lea and Ron Filson ("plaintiffs") filed a Petition for Damages on March 25, 2003, against several defendants, including Keta Construction ("Keta"), and requested that service be withheld as to all defendants. On July 14, 2003, Keta was served with plaintiffs' petition, and on August 25, 2003, Keta answered the petition and propounded discovery requests on plaintiffs. No exceptions were set forth in Keta's answer. The remaining defendants in the suit filed exceptions of insufficiency of service of process and citation based on the fact that plaintiffs' counsel failed to request service upon them within 90 days as required by La. C.C.P. art. 1201(C).[1] On February 6, 2004, the trial court granted the declinatory exceptions of insufficiency of service of process and citation filed by the other defendants and dismissed the plaintiffs' claims against those defendants without prejudice.[2] Thereafter, on February 9, 2004, Keta filed a Motion for Involuntary Dismissal under La. C.C. art. 1672(C), adopting all the arguments made by the other co-defendants. The trial court denied the motion, reasoning that by filing an answer to plaintiffs' petition and by conducting discovery, Keta failed to preserve its right to file a motion for involuntary dismissal. The court of appeal granted Keta's writ application, reversed the trial court's judgment, and granted Keta's motion for involuntary dismissal without prejudice. Filson v. Windsor Court Hotel, et al., 04-C-0943 (La.App. 4 Cir. 10/28/04). We granted plaintiffs' writ application. Filson v. Windsor Court Hotel, et al., 04-2893 (La.2/17/05), 896 So.2d 12.

DISCUSSION
Louisiana Code of Civil Procedure article 1201(C) provides:
Service of the citation shall be requested on all named defendants within ninety days of commencement of the action. When a supplemental or amended petition is filed naming any additional defendant, service of citation shall be requested within ninety days of its filing. The defendant may expressly waive the requirements of this Paragraph by any written waiver.
In this case, plaintiffs did not request service of the citation on Keta within 90 *726 days of filing the petition as required by this article. Subsequently, Keta filed a motion for involuntary dismissal pursuant to La.Code Civ. P. art. 1672(C) which provides:
A judgment dismissing an action without prejudice shall be rendered as to a person named as a defendant for whom service has not been requested within the time prescribed by Article 1201(C), upon contradictory motion of that person or any party or upon the court's own motion, unless good cause is shown why service could not be requested, in which case the court may order that service be effected within a specified time.
Plaintiffs assert that by filing an answer and discovery requests prior to filing the motion for involuntary dismissal, Keta waived its right to object to the late service request. First, plaintiffs argue that by making a general appearance in this case Keta submitted to the jurisdiction of the district court under La. C.C.P. art. 6(3), which provides that a court obtains jurisdiction over a person by the "waiver of objection to jurisdiction by failure to timely file the declinatory exception." La. C.C.P. art. 925, which provides the objections which must be raised by declinatory exception or else they are waived, provides:
A. The objections which may be raised through the declinatory exception include but are not limited to the following:
(1) Insufficiency of citation.
(2) Insufficiency of service of process.
(3) Lis pendens.
(4) Improper venue.
(5) The court's lack of jurisdiction over the person of the defendant.
(6) The court's lack of jurisdiction over the subject matter of the action.
B. When two or more of these objections are pleaded in the declinatory exception, they need not be pleaded in the alternative or in any particular order.
C. All objections which may be raised through the declinatory exception, except the court's lack of jurisdiction over the subject matter of the action, are waived unless pleaded.
La. C.C.P. art. 928 provides, inter alia, that the declinatory exception shall be pleaded prior to or in the answer. We reject plaintiffs' argument for two reasons.
First, an objection to insufficiency of citation or service of process under La. C.C.P. art. 925 "is properly leveled at the form of the citation" and also "focuses on the person to whom citation is delivered or on the manner in which delivery is made." Maraist, Frank L. and Lemmon, Harry T., Louisiana Civil Law Treatise, Vol. 1, § 6.5, p. 108. When a defendant objects to the failure to request service within 90 days, he is not objecting because the service is "insufficient;" rather, it is either non-existent or it is untimely. Where the objection is based on service outside the 90-day time limit of La. C.C.P. art. 1201(C), La. C.C.P. art. 1672(C) specifically provides that the manner for objecting is by filing a motion for involuntary dismissal. While plaintiffs argue that these statutes conflict and are ambiguous, we disagree. Pursuant to general rules of statutory construction, "where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." City of Pineville v. American Federation of State, County, and Municipal Employees, AFL-CIO, Local 3352, 00-1983 (La.6/29/01), 791 So.2d 609, 612; LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226. Clearly, *727 even if Article 925's reference to "insufficiency" of citation and service of process could be read generally to apply where service was not timely requested, Articles 1201(C) and 1672(C) are specifically directed to cases where service was not requested within 90 days of the commencement of the action, making a motion for involuntary dismissal under 1672(C), and not a declinatory exception, the proper method for objecting to late service.
Secondly, the issue in this case is a purely procedural timeliness issue, not whether the court has personal jurisdiction over Keta. As Maraist and Lemmon explained:
The objection of insufficiency of service of process is often used as an additional objection in those cases in which the defendant questions jurisdiction over the person, because personal jurisdiction is linked to service. Article 6 provides that a Louisiana court has personal jurisdiction if service of process is effected upon the defendant. Article 925 provides that if a declinatory exception is filed, the objection of insufficiency of service is waived unless pleaded therein. Using a technical approach, one may argue that a defendant who files a declinatory exception urging only lack of jurisdiction over the person thereby waives the objection to insufficiency of service, thus validating the service and establishing jurisdiction over the person through the language of Article 6. The sounder view, of course, is that jurisdiction is based upon sufficient contacts and that service does not provide jurisdiction, but rather gives the defendant notice of the exercise of that jurisdiction. Under that approach, adopted in the omnibus long-arm statute [La. R.S. 13:3201-3201], the concepts of service and jurisdiction are properly divorced, and the defendant is not subject to the above described potential "trap" of Article 925.
Maraist and Lemmon, supra, p. 109. Thus, while it is clear that the court might have personal jurisdiction over Keta, that does not relieve the plaintiffs of requesting service pursuant to the time limits required of Article 1201(C).
Plaintiffs next argue that even if Articles 1201(C) and 1672(C) apply to the exclusion of Articles 925 and 928, the filing of an answer and discovery requests constitutes a waiver of these service requirements under Article 1201(C). The last sentence of La. C.C.P. art. 1201(C) provides that "[t]he defendant may expressly waive the requirements of this Paragraph by any written waiver." Two issues arise as to this argument. The first is whether the filing of an answer and discovery requests is an express, written waiver of the 90-day service requirement, and the second is whether, by providing that the defendant "may" expressly waive these requirements by any written waiver, that is the only way a defendant may waive these requirements. In determining these issues, we look to the history of these enactments.
In 1997, the legislature imposed the 90-day service request requirement by enacting La. C.C.P. art. 1201(C) and by adding La. C.C.P. art. 1672(C) to correlate with the addition of La. C.C.P. art. 1201(C). See Cubas v. Brown, 03-0664 (La.App. 4 Cir. 9/3/03), 853 So.2d 1138. The court in Cubas went so far as to find that even though the defendant signed a written waiver of service, this waiver was basically invalid because it was not made within the 90-day time limit, reasoning that La.C.C.P. art. 1201(C) mandated a request for service within 90 days and 1672(C) required involuntary dismissal if timely service was not made.
As 1201(C) and 1672(C) were added in 1997 to specifically deal with *728 problems relating to withholding service, these statutes take precedence over earlier enacted statutes dealing generally with insufficiency of citation and service. In Killeen v. Jenkins, this Court held that "when two acts are clearly irreconcilable and are so inconsistent that the two cannot have concurrent operation, then the latest enactment should be applied." 98-2675 (La.11/5/99), 752 So.2d 146, 148 (citing State v. Piazza, 596 So.2d 817 (La.1992); see also 1 M. Planiol, Traite Elementiare de Droit Civil, No. 228 (12th ed.1939), reprinted in Treatise on the Civil Law at 165 (La.St.L.Ins.Trans.1959)); cf. La. R.S. 24:176(A) ("Unless otherwise specifically provided therein, all laws or parts of laws in conflict with a provision of a law subsequently enacted by the legislature are repealed by the law subsequently enacted.").
The other issue is whether, by providing that the defendant "may" expressly waive these requirements by any written waiver, that is the only way a defendant may waive these requirements. The settled rule of statutory construction that the mention of one thing in a statute implies the exclusion of another thing, i.e., the doctrine of Expressio Unius est Exclusio Alterius, dictates that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute is deemed intentional. State Through Dept. of Public Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Com'n and Horseshoe Entertainment, 94-1872(La.5/22/95), 655 So.2d 292, 302 (citing State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 (1936); Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325 (1943); Newblock v. Bowles, 170 Okla. 487, 40 P.2d 1097, 1100 (1935); Sutherland Statutory Construction, § 47.23 (5th Ed.1992); Earl T. Crawford, The Construction of Statutes, § 195, at 334 (1940)).
For instance, if the legislature had intended that the provisions of 1201(C) could be impliedly waived by the filing of an answer or discovery requests, the legislature could have stated this in the statute, or it could have omitted the word "expressly." Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 149. To hold that the 90-service requirement could be impliedly waived would make the word "expressly" meaningless.
As another rule of statutory construction instructs us, when a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. See La. Civ.Code art. 9; La.Rev.Stat. 1:4. Plaintiffs argue that if we interpret these statutes as to mean that the filing of an answer does not constitute a waiver of the 90-service requirement, then a defendant who is not timely served may answer the petition and participate in the litigation process, and, if it becomes evident that he might lose the case, the defendant can file his motion for involuntary dismissal right up until judgment and have the case dismissed. However, this tactic works both ways as under Article 1672(C), not only that defendant, but "any party," or the court upon its own motion, may file a contradictory motion for involuntary dismissal without prejudice where service has not been requested within 90 days. Further, most untimely served defendants would not saddle themselves with the time and expense of the litigation process just to file a motion for involuntary dismissal that could have been filed at the *729 outset, especially in light of the fact that the dismissal is without prejudice. In addition, to avoid this potential problem, the plaintiff, who obviously knows whether he requested service within 90 days, can request an express written waiver from the defendant, and, if the defendant refuses, he can file the motion for involuntary dismissal himself and force the issue. While this interpretation to the statute might result in more legal maneuvering than is customary or desirable, it hardly results in absurd consequences.
Louisiana courts that have considered this issue since the 1997 amendment of La.C.C.P. arts. 1201(C) and 1672(C) have held that the written waiver contemplated by Article 1201(C) must be clear and express and have consistently held that without the written waiver of service that a plaintiff must adhere to the strict requirements of the 90-day period to request service. Johnson v. Brown, 03-0679 (La.App. 4 Cir. 6/25/03), 851 So.2d 319; Vicedomini v. Pelts & Skins, 01-2268 (La.App. 1 Cir. 2/15/02), 808 So.2d 867, writ denied, 02-813 (La.5/24/02), 816 So.2d 850; Bolner v. Daimler Chrysler Corp., 01-1285 (La.App. 5 Cir. 6/26/02), 820 So.2d 1252, writ denied, 02-2263 (La.11/15/02), 829 So.2d 430. Those cases hold that the mere act of filing an answer and participating in discovery does not constitute an express written waiver of citation and service as contemplated by La. C.C.P. art. 1201(C). Id.
Plaintiffs' heavy reliance on Glass v. Alton Ochsner Medical Foundation, 02-412 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, writs denied, 02-2977, 02-3018 (La.3/14/03), 839 So.3d 36, 37, is misplaced. The issue in Glass was whether a defendant, who was not served within 90 days but who made an appearance of record, was a party to that lawsuit for purposes of an exception of lis pendens. After discussing the jurisdiction requirements of La. C.C.P. art. 6 and the service requirements of La. C.C.P. art. 1201(C), the court held that "[i]n addition to submitting to a court's jurisdiction by submitting a written waiver, a party can also waive an objection to the jurisdiction by an appearance of record." 832 So.2d at 410. However, in Glass, the issue was whether the defendant had submitted to the jurisdiction of the court under La. C.C.P. art. 6(3), not whether he had waived the 90-day service requirement of La. C.C.P. art. 1201(C). In fact, there was no evidence in the record at all indicating whether that defendant was served within 90 days, and no issue of whether that defendant could have filed a motion for involuntary dismissal under La. C.C.P. art. 1672(C). Thus, the Glass case is distinguishable and does not present a conflict among or within the circuits.[3]

CONCLUSION
La. C.C.P. art. 1201(C) mandates that service of citation shall be requested on all named defendants within 90 days of commencement of the action. However, the article also provides that a defendant may expressly waive that requirement by any written waiver. Thus, an express written waiver of the 90-day service requirement is required, and neither an implied waiver nor an oral waiver will suffice. If the requirements of La. C.C.P. art. 1201(C) are not followed, a motion for involuntary dismissal pursuant to La. C.C.P. art. 1672(C) is the proper procedural vehicle for an aggrieved party to obtain a dismissal of the claims against *730 it. Contrary to the declinatory exception of insufficiency of service of process, the motion for involuntary dismissal need not be filed prior to or along with the answer and may be filed after the answer and discovery requests, as long as the answer does not contain an express waiver of the 90-day service requirement.

DECREE
For the reasons expressed herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
CALOGERO, C.J., concurs and assigns reasons.
KIMBALL, J., dissents.
JOHNSON and TRAYLOR, JJ., dissent and assign reasons.
CALOGERO, Chief Justice, concurring.
I agree with the majority opinion. The most recent legislative edict material to the issue raised by this case is the 1997 amendment to La.Code of Civ. Proc. art. 1672, by which the Legislature adopted subsection (C) to facilitate dismissal of a case when a plaintiff has failed to request service within 90 days of filing suit, as required by La.Code of Civ. Proc. art. 1201(C). That provision is a later expression of the legislative will than La.Code of Civ. Proc. art. 925, which provides for the waiver of declinatory exceptions, including the exception of insufficiency of service of process, by the filing of an answer, and which has existed in the Louisiana law in some form since at least 1960. Further, the declinatory exception of insufficiency of service of process under La.Code of Civ. Proc. art. 925 raises a different issue than the issue raised by La.Code of Civ. Proc. art. 1672(C), which focuses specifically on whether the plaintiff has requested service of process within the time frame established by La.Code of Civ. Proc. art. 1201(C). Thus, La.Code of Civ. Proc. art. 1672(C), providing for involuntary dismissal of the plaintiff's suit, is the discrete provision applicable to this case.
On the other hand, I would have to acknowledge that La.Code of Civ. Proc. art. 1672(C) is arguably more an obstacle than an asset to judicial administration and a real impediment to the movement of cases through our courts. The majority acknowledges that defendants could delay raising the plaintiff's failure to timely request service all the way through the trial stage until they think they are losing, and then file a La.Code of Civ. Proc. art. 1672(C) motion for involuntary dismissal without prejudice, on a contradictory motion. Of course, any party can move for involuntary dismissal under that article. For that matter, the court could raise the issue on its own motion even at that late date. The majority's speculation that "most untimely served defendants would not saddle themselves with the time and expense of the litigation process just to file a motion for involuntary dismissal that could have been filed at the outset, especially in light of the fact that the dismissal is without prejudice" is poppycock. A defendant bent on retarding a possible adverse conclusion to litigation may well be prompted to file such a motion, however late.[1] Nevertheless, in the absence of the legislature's revisiting of this issue, that *731 possibility is allowed under the law. The majority is correct in affirming the court of appeal in this case.
JOHNSON, J., dissenting.
In my view, the majority's construction of La. C.C.P. art. 1672(C) thwarts judicial economy and injects unnecessary uncertainty into judicial proceedings. The majority holds that La. C.C.P. art. 1672(C), compared to La. C.C.P. arts. 915(A) and 928(A), is the more specific statute, and should therefore control in this instance. However, both statutes mandate that where service is "insufficient" or "has not been requested within the time prescribed by Article 1201(C)," the proper remedy is to dismiss the suit without prejudice to allow the plaintiff to correct the service defect and re-file the lawsuit. As the majority has pointed out, "where two statutes deal with the same subject matter, they should be harmonized if possible, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." City of Pineville v. American Federation of State, County, and Municipal Employees, AFL-CIO, Local 3352, 00-1983 (La. 6/29/01), 791 So.2d 609, 612.
In my mind, a conflict only arises where an extremely narrow reading of the word "insufficient" is adopted. La. C.C.P. art. 1201(C) provides that "Service of the citation shall be requested on all named defendants within ninety days of commencement of the action." Thus, where a plaintiff has failed to request service of the citation within the statutorily mandated time, the citation is insufficient to satisfy La. C.C.P. art. 1201(C), notwithstanding the form requirements set forth in La. C.C.P. art. 1202. A plain reading of the statute does not suggest that a Motion for Involuntary Dismissal is the sole remedy available for failure to request service of citation, as the grounds for exception set forth in La. C.C.P. art. 925 are illustrative, not exhaustive. Under the present facts, the remaining defendants filed declinatory exceptions of insufficiency of service of process and citation, which were granted, based on the plaintiffs' failure to serve the citation within the ninety day period proscribed by La. C.C.P. art. 1201(C). Therefore, as there is no legitimate conflict between La. C.C.P. art. 1672(C) and La. C.C.P. art. 925, the two statutes should be harmonized, and a Motion for Involuntary Dismissal is improper where defendant has failed to file a declinatory exception prior to or contemporaneous with the answer.
Under the present facts, plaintiffs filed their petition on March 25, 2003 and requested that service be withheld as to all defendants. On July 14, 2003, Keta was served with plaintiffs' petition, and on August 25, 2003, Keta answered the petition and propounded discovery requests on plaintiffs. Thus, Keta was well aware of plaintiffs' failure to timely request service at the time the petition was served, and furthermore, was aware of continuing lack of service a month later, when defendants filed an answer without filing an objection to the lack of service. Keta participated in the litigation process for approximately six months, until, on February 9, 2004, Keta filed a Motion for Involuntary Dismissal, after realizing that the remaining defendants had been dismissed after the trial court granted their exceptions of insufficiency of service of process and citation.
The majority determination insulates a party's lack of diligence by transforming La. C.C.P. art. 1672(C) into an "escape clause" which may be exercised at any point in the proceedings, to the cost and detriment of the other party and our overburdened judicial system; especially where the trial court could have ruled on the exact same procedural defect in a declinatory *732 exception, had the defendant the wherewithal to file the exception. To hold that a party is entitled to file a Motion for Involuntary Dismissal pursuant to La. C.C.P. art. 1672(C) at any time during litigation is to allow both plaintiffs and defendants two bites at the apple, to the detriment of legal system. The majority opinion permits either party, where service is not requested timely, to hold their objection for lack of service, participate in litigation, and then apply for dismissal, without prejudice, if it appears that they will not prevail on the merits. For the aforementioned reasons, I must respectfully dissent.
TRAYLOR, J., dissents and assigns reasons.
I respectfully dissent from the majority opinion. La.Code Civ. Proc. Art. 925 sets forth the objections which must be raised prior to the filing of an answer or be deemed waived. In my view, La.Code Civ. Proc. Art. 925 applies in this case and not La.Code Civ. Proc. Art. 1672.
The majority creates a distinction between "insufficiency" of service and "lack" of service. Effectively, the two terms are synonymous in that both refer to the issue of whether the defendant has knowledge of the claims asserted. In the instant case, Keta filed an answer to plaintiffs' petition and did not seek to object to the lack of service until six months later. To allow a party to participate in litigation for six months and raise a declinatory exception thereafter would result in an increase in unnecessary litigation. Under the majority's view, should a party be discontent with the results of a trial, and no service has been effectuated, the aggrieved party may seek an involuntary dismissal under La.Code Civ. Proc. 1672. This result is inconsistent with the principle of judicial efficiency.
Therefore, I must respectfully dissent from the majority.
NOTES
[1] These exceptions were filed on August 25, 2003 (Windsor Court), October 2, 2003 (Sean Cummings), October 3, 2003 (Orient Express), and October 20, 2003 (ekistics, Inc.).
[2] The judgment signed on February 20, 2004, dismissed plaintiffs' claims against ekistics, Inc., Sean Cummings and the Windsor Court defendants with prejudice, but, an amended judgment was signed on July 29, 2004, dismissing the claims without prejudice.
[3] In the two other cases relied on by plaintiffs, Sam v. Feast, 00-1163 (La.App. 1 Cir. 3/28/01), 802 So.2d 680 and Lawyer v. Succession of Kountz ex rel. Kupit, 00-1888 (La.App. 4 Cir. 1/8/02), 806 So.2d 867, writ denied, 02-253 (La.3/28/02), 812 So.2d 632, the lawsuits were filed prior to the 1997 amendments to La. C.C.P. arts. 1201(C) and 1672(C).
[1] Admittedly, a corresponding possibility exists that plaintiffs (the article allows "any party" to file a motion for involuntary dismissal) who fear losing the suit could file a motion for involuntary dismissal under La.Code of Civ. Proc. art. 1672(C) very late in the trial. That fact too supports my position that the statute could be used to impede the movement of cases through the courts.